UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **STEVEN ATKINSON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**FEDERATED PAYMENT SYSTEMS USA, INC.,** a New York corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Steven Atkinson ("Plaintiff" or "Atkinson") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Federated Payment Systems USA Inc. D/B/A Federated Payments and/or Principle Payments and/or Volt Payments (collectively "Federated" or "Defendant Federated") to (1) enjoin Defendant from continuing to place autodialed telephone calls to consumers who did not provide their prior express written consent to receive them, and (2) obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff is a natural person and resident of Eden Prairie, Minnesota.

2.      Defendant Federated is a corporation with a principal place of business located at One Huntington Quadrangle Fourth Floor – Center Building, Melville, New York 11747. Defendant conducts business throughout New York, Minnesota, and the entire United States.

## NATURE OF THE ACTION

3. Senator Hollings, the Telephone Consumer Protection Act's ("TCPA") sponsor, described computerized calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (internal citation and quotation omitted). As the Eleventh Circuit has observed, "Senator Hollings presumably intended telephone subscribers another option: telling the autodialers to simply stop calling." *Id*. Thus, the TCPA was enacted to empower the private citizen and to protect the privacy of consumers nationwide.

4. Unfortunately, computerized calls continue to increase and further invade the privacy of millions of consumers. In 2016, 4 million complaints related to unwanted calls were lodged with the Federal Communications Commission (the "FCC").[1] This number was markedly higher than the previous year, which yielded 2.6 million complaints (which rose from the year before that).[2] Notably (and inauspiciously), many consumers who have been subjected to illegal

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 - September 30, 2016,* FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwated-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015,* FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf: *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones,* FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014,* FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

calling activity do not report each instance of illegal calling activity, and the actual number of consumers affected by illegal calls is believed to be significantly higher.

5. Here, Defendant contacts consumers *without their prior express written consent* in an effort to solicit their business with respect to payment processing systems.

6. Accordingly, this case addresses Defendant's repeated pattern and practice of calling consumers who have no direct relationship with Defendant on their cellular telephones using an Automated Telephone Dialing System ("ATDS" or "autodialer"). Defendant conducted (and continues to conduct) a wide-scale solicitation campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular telephones without prior express written consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

7. By making these autodialed calls, Defendant caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant made the calls knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

8. The TCPA was enacted to protect consumers from autodialed telephone calls like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all autodialed telephone

calling activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Class under the TCPA and costs:

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

10. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unwanted autodialed solicitation calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and was directed to this District.

12. Venue is also proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

13. Defendant is a company that specializes in providing payment processing systems to businesses all over the United States and Canada.

14. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15. Yet in violation of this rule, Defendant fails to obtain any prior express written consent to make these autodialed solicitation calls to cellular telephone numbers.

16. In fact, this is not the first time Defendant has had to respond to allegations of violating telephone solicitation laws.

17. On January 23, 2009 the Federal Communications Commission issued a citation to Federated Payment Systems LLC (one of the Defendant's brands) "pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements."[3]

18. Many other complaints have been posted online about the unsolicited telemarketing practices of Defendant Federated.

19. The company operates using a number of different names and/or brands, such as Federated Payments, Principle Payments (the name identified when Plaintiff received an unsolicited call), Volt Payments (the name identified when the number was called back), One Pay, AcceptPro, and many others to deflect and distract consumers from the real company making the calls.

20. Defendant has worked very hard to attempt to separate their main company Federated Payment Systems USA, Inc. from the unsolicited telemarketing calls that they are making using other company names. However, all of these are merely brands or aliases of the same company.

---

[3] https://apps.fcc.gov/edocs_public/attachmatch/DOC-292999A1.pdf

21.     Notably, Evan Schweitzer is listed as both the CFO of Defendant Federated,[4] the CFO of The Federated Group[5] (which includes the Federated brands or aliases), and the CEO of Principle Payments.[6]

22.     Mr. Schweitzer was personally addressed in the FCC's citation of Defendant Federated on January 23, 2009 regarding their violations of the do not call registry and telephone solicitations:

> Dear Mr. Schweitzer:
>
> This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements.[1] As explained below, you may appeal this citation. In addition, future violations of the Act or Commission's rules in this regard may subject you and your company to monetary forfeitures.[2]
>
> Attached are consumer complaints regarding telemarketing calls that your company, or an entity acting on behalf of your company, made to telephone lines that are contained in the National Do-Not-Call Registry. These complaints indicate that your company, acting under your direction, has violated the Commission's rules regarding telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).[7]

23.     In order to continue these unsolicited telemarketing practices, while attempting to avoid additional citations, Mr. Schweitzer and Federated have set up alternate names and brands.

24.     A closer look at the Principle Payments website contact page reveals it to be run by Federated.[8]

---

[4] http://www.federatedpayments.com/our-company/leadership-team/

[5] https://www.linkedin.com/in/evanschweitzer
[6] https://www.glassdoor.com/Reviews/Principle-Payments-Reviews-E1163166.htm
[7] https://apps.fcc.gov/edocs_public/attachmatch/DOC-292999A1.pdf
[8] http://www.principlepayments.com/contact-us/

25. Principle Payments lists their email address as info@ppayemail.com. As shown in the image below, this email address domain, *ppayemail.com* is registered to Defendant Federated:[9]

**WHOIS search results**

Domain Name: PPAYEMAIL.COM
Registry Domain ID: 1994258552_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2016-01-14T17:12:42Z
Creation Date: 2016-01-14T17:12:42Z
Registrar Registration Expiration Date: 2021-01-14T17:12:42Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: ok http://www.icann.org/epp#ok
Registry Registrant ID:
Registrant Name: Greg Slote
Registrant Organization: Federated Payment Systems ←
Registrant Street: Two Huntington Quadrangle
Registrant Street: 3rd Floor North
Registrant City: Melville
Registrant State/Province: New York
Registrant Postal Code: 11747
Registrant Country: US
Registrant Phone: +1.6313333728

26. Additionally, Defendant Federated uses the website *https://gotofps.net* (short for Go To Federated Payment Systems) for its employees and agents to login to their autodial systems.

27. Their login site, *https://gotofps.net*, is used by the approximately ten different companies or brands which are run by Defendant Federated, including Principle Payments, Volt Payments, AcceptPro, and more, as shown in the webpage screenshot below:[10]

---

[9] https://www.godaddy.com/whois/results.aspx?domain=ppayemail.com
[10] https://gotofps.net/

PLAINTIFF'S CLASS ACTION COMPLAINT                 7



*Figure 1: GotoFPS.net*

28.     In placing the calls that form the basis of this Complaint, Defendant Federated utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to store or to generate telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

29.     Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

30.     On their login site, *gotofps.net*, Defendant Federated actually include a login to their autodialer, Five9, which is used by agents calling under all of Defendant Federated's assumed names.



31.     Five9 is a "power dialer," a type of automatic telephone dialing system.[11]

32.     Also, Defendant Federated posted a classified ad (through one of their aliases AcceptPro) on Linkedin to find a lead generator at their call center where they admit to using a "power dialer" for their outbound lead generation:

---

[11] As explained on five9's website a "power dialer" is a type of ATDS:

What Is a Power Dialer?

A power dialer is an automated telephone dialing system that connects prospects with agents more efficiently by allowing agents to focus on live connections instead of manual dialing. A power dialer differs from a progressive or predictive dialer in that it utilizes a manually-configured calls-to-agent ratio. When an agent becomes available, the system automatically dials the next contacts based on that ratio. With this setting, the contact center is given ultimate control over the automatic dialing rates.

By automating outbound dialing, the Five9 Power Dialer maximizes the amount of time agents spend talking to real prospects and customers. The Power Dialer is especially useful when a contact center has a small number of sales executives and a large number of prospects. You can throttle dialing rates up or down by choosing between Predictive, Progressive, and Power dialing modes. In addition, Five9 offers time zone rules along with vertical and list dialing features, so you can customize dialing behavior to your compliance and business needs.

https://www.five9.com/products/virtual-contact-center/power-dialer

PLAINTIFF'S CLASS ACTION COMPLAINT                                9



[12]

33. AcceptPro is a trademarked name also registered to Defendant Federated.[13]

34. On its company history page, Federated advertises using an autodialer.

35. The history page notes that, in 2006 Federated introduced a new, "state-of-the-art" dialer and MSP—or a managed service provider for IT solutions, which is commonly packaged with autodialer services—for the company:[14]

---

[12] https://www.linkedin.com/jobs/view/lead-generator-%E2%80%93-call-center-at-acceptpro-558904598/
[13] https://trademarks.justia.com/872/78/acceptpro-87278397.html
[14] http://www.federatedpayments.com/history/

PLAINTIFF'S CLASS ACTION COMPLAINT           10

**2006**
- After 2 years of development, Federated introduces **Safepay**, its proprietary ecommerce gateway, as well as a state-of-the-art MSP and dialer
- Scott Avery promoted to SVP of Sales

36.  Finally, a number of complaints have been posted online from consumers that received unsolicited telemarketing calls from Defendant using the alias Principle Payments. Consumers have complained of the following:

- *"We receive a minimum of 2 sales calls a day from this company. If you ask to be taken of* [sic] *the call list they will say ok and hang up. Try to explain this issue and ask for a supervisor and you are hung up on as well. This is borderline harassment as they've started contacting our emergency line as well as the owner's cell phone."*[15]
- *"Called my business cell. Hang up."*[16]
- *"calling from principal payment* [sic] *(merchant services).. asking if they can send someone to talk to us about their rates.. don't pick up.."*[17]
- *"They say that they are a wholesale credit processing company for business to save us money on our credit card processing. Obviously fraud but they just wont get lost. SO TIRED OF THIS FRAUD!! They call again and again and again."*[18]
- *"Got a call from them today, with the usual spiel about lowering our processing rates."*[19]
- *"called, answered, no one spoke just hung up"*[20]
- *"They called wanting to switch our debit machines over to their machines. It was a call centre type call as it was [heard] when I answered. Then I heard a click and a salesman came on. I hung up."*[21]
- *"I have been receiving calls a few times per day from this number at work. Never anyone on the line when I answer."*[22]

37.  When placing these calls to consumers, Defendant failed to obtain prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls.

---

[15] Google reviews – "Principle Payments"
[16] https://800notes.com/Phone.aspx/1-248-260-2774
[17] *Id.*
[18] https://whocallsme.com/Phone-Number.aspx/7808519044
[19] https://whocallsme.com/Phone-Number.aspx/7808519044
[20] https://800notes.com/Phone.aspx/1-902-701-9215
[21] https://800notes.com/Phone.aspx/1-902-701-9215
[22] https://800notes.com/Phone.aspx/1-902-701-9215

38. At all times material to this Complaint, Defendant was and is fully aware that unwanted autodialed telemarketing calls are being made to consumers' cellular telephones through its own efforts and their agents' efforts.

39. In fact, as has been shown, Defendant has gone out of their way to create a number of different identities such as Principle Payments, AcceptPro, and more, for the purpose of placing unwanted autodialed telemarketing calls.

40. Defendant made (and continues to make) autodialed solicitation calls to cellular telephones without the prior express written consent of the call recipients. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF STEVEN ATKINSON

41. At the end of November 2017 Plaintiff Steven Atkinson received an autodialed call on his cellular phone from the Defendant using phone number 248-260-2774.

42. Upon answering the call, Atkinson noticed a long delay. After this long delay, the agent came on the line. Such a delay is indicative of the use of an autodialer.

43. The agent told Plaintiff that the name of the company she represented was "Principle Payments."

44. The agent told Plaintiff that the purpose of the call was regarding payment processing systems for a business owner. Plaintiff informed the caller that he does not own a business and has no use for a payment processor.

45. Federated uses the telephone number 248-260-2774, among many others, to place solicitation calls to potential clients without their consent.

46. Plaintiff does not have a relationship with Federated, Principle Payments, or any of its affiliated companies or brands, nor has ever requested that Federated, Principle Payments, or any of its affiliated companies or brands, place calls to him.

47. Simply put, Federated did not possess Plaintiff's prior express written consent to place a solicitation telephone call to him on his cellular telephone using an autodialer and Plaintiff has no business relationship with Federated.

48. By making unauthorized autodialed telephone calls as alleged herein, Federated has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. The calls disturbed Atkinson's use and enjoyment of his cellular telephone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Atkinson's cellular telephone.

49. In the present case, a consumer could be subjected to many unsolicited calls as Federated does not take care to ensure that the recipients of its autodialed solicitation calls have given their prior express written consent to be called.

50. Seeking redress for these injuries, Atkinson, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

51. On behalf of the Class, Atkinson seeks an injunction requiring Federated to cease all unsolicited autodialed telephone calling activities and an award of statutory damages to the class members, together with costs.

## CLASS ALLEGATIONS

52. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, and (3) using an autodialer.

53. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

54. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed autodialed solicitation calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

<a>

<b>

</b>
</a>

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant's conduct constitutes a violation of the TCPA;
>
> (b) whether Defendant systematically made telephone calls to members of the Class without first obtaining prior express consent to make the calls; and
>
> (c) whether Defendant utilized an automatic telephone dialing system to make its calls to members of the Class.

56. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

57. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227 *et seq.*)
### (On Behalf of Plaintiff and the Autodialed No Consent Class)

58. Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

59. Defendant made autodialed solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express written consent to receive such calls.

60. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

61. By making the unwanted solicitation telephone calls to Plaintiff and the Autodialed No Consent Class members' cellular telephones without their prior express consent, and by utilizing an autodialer to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

62. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

63. An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

64. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

65. An order declaring that Defendant's actions, as set out above, violate the TCPA;

66. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

67. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

68. An order requiring Defendant to identify any third-party involved in the autodialing as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

69. An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Class;

70. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

71. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

72. An award of reasonable attorneys' fees, if appropriate, and costs; and

73. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEVEN ATKINSON**, individually and on behalf of a class of similarly situated individuals

Dated: March 30, 2018

By: /s/Karin Ciano
One of Plaintiff's Attorneys

Karin Ciano
Bar No. MN 0343109
Karin Ciano Law PLLC
310 Fourth Avenue South Suite 5010
Minneapolis, MN 55415
Phone: (612) 367-7135
Fax: (612) 437-4440
Email: karin@karincianolaw.com

Stefan Coleman*
Law Offices of Stefan Coleman, P.A.
law@stefancoleman.com
1072 Madison Ave. #1
Lakewood, NJ 08701
Phone: (877) 333-9427
Fax: (888) 498-8946

Avi R. Kaufman*
Kaufman P.A.
kaufman@kaufmanpa.com
400 NW 26TH Street
Miami, FL 33127
Phone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*To Be Admitted Pro Hac Vice